## Henry L. Turner v. Lord & Thomas, a corporation.

### Gen. No. 12,091.

1. INSTRUCTIONS—*must not single out particular evidence.* Instructions are erroneous which single out and give undue prominence to particular evidence.

2. INSTRUCTIONS—*must not ignore material evidence.* Instructions are erroneous which ignore material evidence. in a cause.

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. ROBERT W. WRIGHT, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1904. Reversed and remanded. Opinion filed December 22, 1905.

MENZ I. ROSENBAUM, for appellant; GEORGE M. HOFF-HEIMER, of counsel.

PINCKNEY, TATGE & ABBOTT, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is an action in assumpsit brought to recover upon a bill for advertising. The advertising was done, it is claimed, for the Vining Novelty Works and it is sought to hold appellant liable therefor upon the alleged ground that he had personally purchased and was the owner of the concern known as Vining Novelty Works at the time when the advertising in controversy was done.

It is not questioned that one George C. Vining, former proprietor of the business known as Vining Novelty Works, conveyed the same to appellant by bill of sale dated November 6, 1899, in accordance with a proposition of sale made in writing by Vining to appellant dated the first of the same month which was accepted by appellant on the sixth. It is claimed, however, in behalf of appellant that the purchase was made by, for and in behalf of a corporation known as the American Consumers' Alliance of which appellant was

president, and that the conveyance was taken by appellant in his own name to secure payment by the Alliance of purchase money which appellant, who is a banker, advanced. The latter was a stock-holder in the Alliance, but not the largest holder of its stock. There is evidence tending to show that the purchase of the business of the Vining Novelty Works was suggested to A. B. Nettleton, general manager of the Alliance, by an advertising solicitor in the employ of appellee. This solicitor was, it is said, introduced to appellant who was then, as we have said, president of said Alliance, by the said general manager, and was told by appellant that said general manager Nettleton had the matter in charge. When the said sale and purchase was consummated, the former owner, George C. Vining, was retained to conduct the business of the Novelty Works with directions to report to Nettleton, manager of the Alliance. This he did. June 8, 1900, Vining was directed in a written communication from appellant to "place in the hands of Mr. Gleason your list of agents and that you follow his instructions to the letter;" and the further direction was given him in the same communication "that from this time on the business be conducted as the 'Agents Department' of the American Consumers' Alliance, and that all literature, all advertising matter, catalogues, etc., be at once properly stamped to carry out this direction." Mr. Gleason was the mercantile manager of the Alliance and Vining testifies that thereafter until his connection with it was severed, he "managed the business under Mr. Gleason's direction." Vining further testifies that after the business was sold he reported daily to one Laird, cashier of the American Consumers' Alliance, and that he had conversation with Nettleton whom he says "was the general manager of the American Consumers' Alliance," almost every day. The testimony of Nettleton is to the effect that he was secretary and general manager of the American Consumers' Alliance, when in the late summer or early fall of 1899, Mr. Brandon, the said advertising solicitor of appellee, first broached to him (Nettleton) the matter of advertising, and as such general manager

he afterward had "conferences with some of the gentlemen connected with Lord & Thomas, possibly one of the partners;" that Brandon suggested to him—Nettleton—the purchase of the Vining Novelty Works as a concern which might be useful and valuable "if purchased by the Consumers' Alliance;" that Brandon sent or brought Vining to him, and that he, Nettleton, was negotiating for the American Consumers' Alliance; that he was not in the employ of Henry L. Turner & Co., but was in the employ of the Alliance; that having examined Vining's stock and gone cursorily over his books he told Vining that he "would recommend to Col. Turner, the president of the American Consumers' Alliance, the purchase of his stock and business;" that "after the purchase by the Alliance" he made frequent and almost daily visits to the place, and had conferences with Mr. Vining and Mr. Gleason, and that he gave "instructions to Mr. Vining daily or every day as to the management of the business;" that in the course of his negotiations with Vining for the purchase of the latter's business, Vining asked him (Nettleton) what was the responsibility of 'the American Consumers' Alliance, and upon being told that the corporation had not any considerable available capital at that time, Vining said he would not then sell to the Alliance except for cash; that Nettleton then said he "would recommend to Col. Turner, the president of the corporation, and he would see that it be secured otherwise," whereupon Vining replied that if that could be done the deal could be carried through.    Nettleton states that the bill of sale was executed by Vining to Turner and the property delivered to Mr. Gleason, mercantile manager of the Alliance, who went to the rooms and took a detailed inventory of all Vining's goods under Nettleton's instructions.

This evidence, which so far as we are advised is undisputed, tends to show that appellant was president of the Alliance, that the purchase of the business of the Novelty Works was made for and by the Alliance, but that the conveyance was taken in appellant's name and that he ad-

vanced the money for the purchase; that the business so purchased was operated under the direction and control of the Alliance from the outset, and that Vining who was retained as its manager received and obeyed the instructions received from the managers of the Alliance. It also appears that Brandon, appellee's solicitor, who says he called on Nettleton, general manager of the Alliance, and proposed to him the purchase by the Alliance of the Novelty Works "as a nucleus for a large business," "discussed the matter" as he says "with heads of my firm and we did not think it feasible," referring to Nettleton's explanation to him of what it was proposed to do with the Alliance.

There is some conflict of evidence as to what was said by Turner and Nettleton to Vining at the time of the sale with reference to the purchase by Nettleton of the Vining Novelty Works for the Alliance. Turner states that he told Vining at the time of the purchase "that this business was being bought for the American Consumers' Alliance." Vining contradicts both Nettleton and Turner as to this, and says he "first heard of the Alliance after the sale." We regard it, however, as not very material under the uncontradicted evidence, whether Vining knew before or after the sale what seems to be a fact undisputed by any evidence other than the contract of purchase in appellant's name and the bill of sale in accordance therewith. There is also a release by Vining to Turner signed by both, dated July 23, 1900, in which Vining acknowledges payment and releases Turner and his assigns from any further payments under the original contract of sale to Turner dated November 6, 1899. The check for $420.42 by which that final payment of purchase money to Vining was made was, as appears from an affidavit made in support of a motion for a new trial, signed by "American Consumers' Alliance (Inc.) by F. G. Laird, Cashier." According to the affidavit the check was not discovered until after the trial now before us for review.

The contract under which appellee began to advertise for Vining Novelty Works was made with Vining on or about August 24, 1899, which was more than two months before

the bill of sale was made conveying the business to Turner for the Alliance. By the terms of that contract the advertising was to begin September 1, 1899, and to continue for one year. After the sale Vining, who was then managing the business under the direction of the Alliance, continued to advertise with appellee. He himself personally paid for the advertising done prior to the sale, and for the advertising done thereafter payment was made by checks drawn on an account in name of Vining Novelty Works in the bank of Henry L. Turner & Co. These checks were signed "Vining Novelty Works, by Geo. C. Vining." There are five such checks in evidence, and one additional check dated May 24, 1900, to the order of appellee, signed by "American Consumers' Alliance per Frederick G. Laird, Cashier." This check was drawn, as Vining states, at his request while he was still manager of the Novelty Works business under direction of the Alliance. It thus appears that appellee received payment for some of this advertising directly from the Alliance. August 16, 1900, appellee wrote to appellant in part as follows:

"Dear Sir: We beg to call your personal attention to our account against the Vining Novelty Works on which you are guarantor." The letter proceeds to state the amount of appellee's demand and is signed "Lord & Thomas." It thus appears that at that time appellee did not regard appellant as liable to it on the account except in a collateral way, which they describe as "guarantor." There is no evidence of any kind tending to prove a guaranty of the account by appellant. No such claim seems to have been made at the trial. There is evidence not uncontradicted, it is true, but nevertheless tending to show that appellant and the other officials and managers of the Alliance were informed that the advertising in question was being done for the branch of the business then being conducted by the Alliance as Vining Novelty Works.

Appellee's counsel state the sole and only question to be whether the jury were warranted from all the evidence and under the instructions of the court in "finding that Henry

L. Turner, appellant, was liable for the balance of the un-
paid advertising bill." If such liability exists it can only,
we think, arise from some act or acts of Turner by which
appellee was led to believe that it was doing the work for
Turner personally or as owner of the Novelty Works. From
the testimony of its own advertising solicitor, appellee was
informed that the business was taken over by the Alliance.
It does not appear that it ever knew at the time when the
advertising was being done that appellant had even taken
the bill of sale of the Vining Novelty Works in his own
name. Its letter to Turner of August 16, 1900, signed by
someone who apparently had authority to sign appellee's cor-
porate name, shows that it did not regard appellant as under
contract liability to pay for the advertising. It puts its de-
mand for payment from him on an entirely different ground.
It is not apparently contended by appellee that appellant
ever held himself out to the public or to appellee as pur-
chaser of the Novelty Works. Nor is our attention directed
to any evidence which tends to show that Vining was the
agent of appellant personally in the advertising. The un-
disputed evidence is convincing that after he sold out Vining
was employed by and for the Alliance. We regard the evi-
dence in this record insufficient to sustain the finding.

Our attention is called to alleged errors in the instruc-
tions given at the request of appellee. The first of these
is as follows:

"The court instructs the jury that whether or not the
letter of George C. Vining to Henry L. Turner, dated No-
vember 1, 1899, and the acceptance thereof by the said Henry
L. Turner constituted the said George C. Vining the agent
of the defendant is a matter of law for the court to deter-
mine, and not for the jury, and the jury should take the
instructions of the court thereon."

This instruction singles out the letter of November 1,
1899, in which Vining made the proposition of sale of the
Novelty Works to Turner which the latter subsequently ac-
cepted of date November 6th following, as controlling evi-

dence by which the jury must determine Turner's liability, and it ignores the evidence tending to show that Turner in making the purchase was acting for the American Consumers' Alliance. This was misleading and clearly erroneous. Chesney v. Meadows, 90 Ill., 430–433; Smith v. Chicago & W. I. R. R. Co., 105 Ill., 511–522.

We need not lengthen this opinion by quoting the second instruction *verbatim.* It will suffice to say that it tells the jury if they believe from the evidence the letter of November 1, 1899, was accepted by Turner, and that he bought the business of the Novelty Works for himself, and that Vining pursuant to the letter assumed the management for Turner, then Vining became manager and agent for Turner; and that if they further believe from the evidence that appellee did the advertising in question under the order of "Vining, acting under the authority contained in said letter and acceptance, then the jury must find for the plaintiff." This instruction also singles out the letter referred to, practically tells the jury that they may ignore the other evidence, and implies that it is of no importance whether Turner was or was not acting for the Alliance in making the purchase. .

For the errors indicated the judgment of the Superior Court must be reversed and the cause remanded.

*Reversed and remanded.*